UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **IN RE THE MATTER OF:** ) | |
| ) | |
| **YVETTA MASSEY** ) | |
| ) | |
| **Plaintiff,** ) | 17CV _____ |
| ) | |
| ) | **Hon. Judge** |
| vs. ) | **Maj Judge** |
| ) | |
| **CHURCHVIEW SUPPORTIVE LIVING, INC.,** ) | |
| **GARDANT MANAGEMENT SOLUTIONS, INC.,** ) | |
| **and KENYATTA BELL, In her Individual Capacity,** ) | |
| **Defendants.** ) | |

# COMPLAINT

**COMES NOW THE PLAINTIFF**, **YVETTA MASSEY** by and through her counsel, Calvita J. Frederick and Associates, and complaining of the Defendant CHURCHVIEW SUPPORTIVE LIVING, INC., GARDANT MANAGEMENT SOLUTIONS, INC., and KENYATTA BELL, in her Individual Capacity, alleges as follows:

## THE PARITES

1. PLAINTIFF YVETTA MASSEY**,** ("MASSEY" or "Plaintiff") is a female, black citizen of the United States, and at all times relevant thereto was a resident of the City of Chicago, County of Cook and the State of Illinois.

2**.** DEFENDANT CHURCHVIEW SUPPORTIVE LIVING ("CHURCHVIEW" or Defendant(s)"), is an Illinois corporation, licensed to do business within the State of Illinois, with its principal place of business located at 2626 West 63rd Street, Chicago, Illinois. CHURCHVIEW provides an affordable assisted living facility for the older adult in the Chicago Lawn and Marquette Park areas of the City of Chicago. CHURCHVIEW employs more than 15 people in total.

3. **GARDANT MANAGEMENT SOLUTIONS, INC., ("GARDANT"** or **"**Defendant(s)"**),** is an Illinois corporation, licensed to do business within the State of Illinois,

with its principal place of business located at 535 East North Street, Suite E, Bradley, Illinois. **GARDANT** manages, owes and/or operated CHURCHVIEW, and employs more than 100 people.

4. **KENYATTA BELL** ("BELL" or "Defendants"), is an agent, servant and/or employee of CHURCHVIEW, with the title Administrator and who was the manager and/or supervisor of Plaintiff.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over these claims because they arise under the laws of the United States pursuant to 28 U.S.C. § 1331.

6. Venue is proper in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §§ 1391(b) and (c) because: Defendant CHURCHVIEW operates in Cook County within the venue; Defendant GARDANT has sufficient minimum contacts with the venue although its principal office is in Kankakee County in the Central District of Illinois; and all of the events or omissions giving rise to these claims occurred in the venue.

7. This Court has supplemental jurisdiction over the claim in Counts V, VI, VII, VIII, IX and X alleging Intentional and Negligent Infliction of Emotional Distress under Illinois law, as these claims arise under the same case or controversy, as required by 28 U.S.C. § 1331.

## FACTS RELEVANT TO ALL COUNTS

8. MASSEY was hired by CHURCHVIEW, as Director of Nursing on or about March 3, 2015.

9. At all times material to this complaint, MASSEY proved her industriousness, presented and represented herself in an orderly and respectful manner and commanded and continues to command the respect of her fellow employees. Additionally, MASSEY demonstrated her capacity and abilities to perform all job tasks to which she was assigned.

10.     In 2015, MASSEY was diagnosed with a rare condition known as Nesidioblastosis, which is an endocrine disability, and a disability within the meaning of the ADA and the Rehabilitation Act.

11.     This condition required MASSEY to eat every two hours.

12.     Plaintiff was able to perform the essential functions of the job with reasonable accommodation of being able to eat every two hours and so informed the defendants.

13.     Defendants were aware of Plaintiff's disability and the accommodations she required.

14.     On July 28, 2015, Plaintiff received a verbal warning for being absent from work due to a hospitalization for her disability.

15.     On August 20, 2015, Plaintiff received a written warning for being absent from her job due to a hospitalization for her disability. (See Corrective Action Form attached hereto as Exhibit "A")

16.     Plaintiff did not receive a final warning, but was terminated over the telephone on November 11, 2015, followed by a letter dated November 12, 2015. The reason given for the termination was excessive absences from work due to illness. (See Letter of Termination attached hereto as Exhibit "B")

17.     At the time of Plaintiff's termination, she was excused from work due to illness but on November 15, 2015, she was released to return to work on November 21, 2015 without restrictions. (See Letter from RUSH attached hereto as exhibit "C")

18.     On or about January 8, 2016, MASSEY filed EEOC Charge 440-2016-01558, with the US Equal Employment Opportunity Commission. (See EEOC Charge attached hereto as Exhibit "D")

19. On or about December 21, 2016, the EEOC mailed to Plaintiff's counsel the Dismissal and Notice of Right to Sue. (See Dismissal and Notice of Rights attached hereto as Exhibit "E").

20. MASSEY is a qualified individual with a disability under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act.

21. Defendants, CHURCHVIEW, GARDANT, and BELL regarded Plaintiff as having a disability within the meaning of the ADA and the Rehabilitation Act.

22. Plaintiff has a record of a disability under the ADA and Rehabilitation Act.

23. Due to her disability, MASSEY must eat something every two hours.

24. Defendants failed and refused to provide reasonable accommodations for MASSEY'S disability.

25. CHURCHVIEW is a private entity subject to and existing under Title I of the ADA, 42 U.S.C. §12132.

26. CHURCHVIEW is a recipient of federal funding under the Rehabilitation Act.

27. BELL discussed and forced MASSEY to discuss her medical condition and disability openly and in front of other CHURCHVIEW employees, in violation of the ADA and 42 USC §12112 (D) (3) (B)

28. Defendants' discriminatory treatment of MASSEY included but is not limited to:

 (A) Refusing to provide a reasonable accommodation for MASSEY due to her disability;

 (B) Fabricating a pretextual reason to terminate MASSEY when the real reason was MASSEY'S disability;

 (C) Creating a hostile, offensive, and humiliating work environment for MASSEY by forcing her to discuss her medical condition and her disability in front of other employees;

 (D) Threatening, demeaning and humiliating MASSEY openly about her medical condition;

    (E)    Belittling MASSEY and promising to terminate her if she was absent again due to illness;

    (F)    Bullying and attempting to force MASSEY to agree to a voluntarily resignation;

    (G)    Bullying and attempting to force MASSEY to give up her rights to be absent due to a medical emergency and/or illness; and

    (H)    Terminating MASSEY for illness and absence from work due to her disability.

29.     As a result of defendants' actions toward MASSEY, MASSEY was discriminated against because of her disability.

## COUNT I
## VIOLATION OF THE REHABILIATION ACT AGAINST CHURCHVIEW

30.     Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 29 above.

31.     Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides that:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

32.     Because Nesidioblastosis substantially limits at least one of Plaintiff's major life activities, Plaintiff is an individual with a disability under the Rehabilitation Act.

33.     Plaintiff was fully qualified to be a Director of Nursing and was able to perform all the essential functions of the position.

34.     CHURCHVIEW receives Federal funding.

35.     CHURCHVIEW'S assisted living facility constitutes a program or activity within the meaning of the Rehabilitation Act.

36. CHURCHVIEW'S conduct was based on MASSEY'S status as a person with a disability.

37. CHURCHVIEW did not:

    a) conduct a bona fide and proper individualized assessment;

    b) engage in the interactive process;

    c) explore reasonable modifications and/or accommodations; and/or

    d) allow MASSEY to maintain her job

38. CHURCHVIEW unlawfully terminated MASSEY from her job because of her disability.

39. CHURCHVIEW by virtue of the conduct described herein, discriminated against Plaintiff because of her disabilities in violation of § 504 of the Rehabilitation Act of 1973.

**WHEREFORE**, MASSEY requests that this Court enter judgment in her favor and against CHURCHVIEW as follows:

    a) A declaratory judgment that CHURCHVIEW has discriminated against MASSEY by terminating her employment in violation of § 504 of the Rehabilitation Act;

    b) An order requiring CHURCHVIEW to return MASSEY to employment;

    c) An order requiring CHURCHVIEW to provide any reasonable accommodations or modifications that may be necessary;

    d) Compensatory damages;

    e) Attorneys' fees and costs;

    f) An order requiring CHURCHVIEW to undergo ADA and disability awareness training; and

    g) Such other relief as the Court deems just and proper.

## COUNT II
## CHURCHVIEW'S VIOLATION OF TITLE I OF THE ADA

40. Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 29 above.

41. Title I of the ADA provides in pertinent part as follows:

"It is unlawful for a covered entity not to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation. 29 CFR 1630.9

And also,

No covered entity shall discriminate against a qualified individual **on the basis of disability** in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. 29 CFR 1630.9

42. CHURCHVIEW is a covered entity within the meaning of Title I of the ADA.

43. MASSEY is a qualified entity within the meaning of Title I of the ADA

44. CHURCHVIEW by virtue of the conduct described herein, discriminated against MASSEY because of her disability in violation of Title I of the ADA and deprived her of equal employment opportunities.

45. As a result of CHURCHVIEW'S actions, MASSEY has suffered economic loss, deleterious impact on her professional career, dignitary injuries and other injuries.

**WHEREFORE**, MASSEY requests that this Court enter judgment in her favor and against CHURCHVIEW as follows:

a) A declaratory judgment that CHURCHVIEW has discriminated against MASSEY by terminating her employment in violation of Title I of the ADA;

b) An order requiring CHURCHVIEW to return MASSEY to employment;

c) An order requiring CHURCHVIEW to provide any reasonable accommodations or modifications that may be necessary;

d) Compensatory damages, including back pay;

e) Attorneys' fees and costs;

f) An order requiring CHURCHVIEW to undergo ADA and disability awareness training; and

g) Such other relief as the Court deems just and proper.

## COUNT III
## VIOLATION OF THE REHABILIATTION ACT AGAINST GARDANT

46. Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 29 above.

47. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides that:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

48. Because Nesidioblastosis substantially limits at least one of Plaintiff's major life activities Plaintiff is an individual with a disability under the Rehabilitation Act.

49. Plaintiff was fully qualified to be a Director of Nursing and was able to perform all the essential functions of the position.

50. GARDANT receives federal funding.

51. GARDANT'S assisted living facility constitute a program or activity within the meaning of the Rehabilitation Act.

52. GARDANT'S conduct was based on MASSEY'S status as a person with a disability.

53. GARDANT did not:

      a) conduct a bona fide and proper individualized assessment;

      b) engage in the interactive process;

      c) explore reasonable modifications and/or accommodations; and/or

      d) allow MASSEY to maintain her job

54.    GARDANT unlawfully terminated MASSEY from her job because of her disability.

55.    GARDANT by virtue of the conduct described herein, discriminated against Plaintiff because of her disabilities in violation of § 504 of the Rehabilitation Act of 1973.

    **WHEREFORE**, MASSEY requests that this Court enter judgment in her favor and against GARDANT as follows:

    a) A declaratory judgment that GARDANT has discriminated against MASSEY by terminating her employment in violation of § 504 of the Rehabilitation Act;

    b) An order requiring GARDANT to return MASSEY to employment;

    c) An order requiring GARDANT to provide any reasonable accommodations or modifications that may be necessary;

    d) Compensatory damages;

    e) Attorneys' fees and costs;

    f) An order requiring GARDANT to undergo ADA and disability awareness training; and

    g) Such other relief as the Court deems just and proper.

**COUNT IV**
**GARDANT'S VIOLATION OF TITLE I OF THE ADA**

56.    Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 29 above.

57.    Title I of the ADA provides in pertinent part as follows:

> "It is unlawful for a covered entity not to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation. 29 CFR 1630.9

And also,

No covered entity shall discriminate against a qualified individual **on the basis of disability** in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. 29 CFR 1630.9

58. GARDANT is a covered entity within the meaning of Title I of the ADA.

59. MASSEY is a qualified entity within the meaning of Title I of the ADA

60. GARDANT by virtue of the conduct described herein, discriminated against GARDANT because of her disability in violation of Title I of the ADA and deprived her of equal employment opportunities.

61. As a result of GARDANT'S actions, MASSEY has suffered economic loss, deleterious impact on her professional career, dignitary injuries and other injuries.

**WHEREFORE**, MASSEY requests that this Court enter judgment in her favor and against GARDANT as follows:

a) A declaratory judgment that GARDANT has discriminated against MASSEY by terminating her employment in violation of Title I of the ADA;

b) An order requiring GARDANT to return MASSEY to employment;

c) An order requiring GARDANT to provide any reasonable accommodations or modifications that may be necessary;

d) Compensatory damages, including back pay;

e) Attorneys' fees and costs;

f) An order requiring GARDANT to undergo ADA and disability awareness training; and

g) Such other relief as the Court deems just and proper.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST CHURCHVIEW

62. Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 29 above.

63. The actions of CHURCHVIEW in terminating MASSEY for absences related to her disability, was intended to cause or recklessly or consciously disregarded the probability of causing MASSEY severe and significant emotional distress.

64. The conduct of CHURCHVIEW against MASSEY was extreme and outrageous.

65. The actions of CHURCHVIEW did cause MASSEY severe and significant emotional distress and caused physical harm in the form of stress, anxiety, migraines, nausea, difficulties sleeping, and other harm.

**WHEREFORE**, MASSEY requests that this Court enter judgment in her favor and against all Defendants as follows:

a) A declaratory judgment that CHURCHVIEW has intentionally inflicted emotional distress upon MASSEY in violation of Illinois law;

b) An order requiring CHURCHVIEW to allow MASSEY to return to employment as Director of Nursing with reasonable accommodations.

c) Compensatory damages, including lost wages, back pay and front pay;

d) Punitive damages;

e) Attorneys' fees and costs;

f) An order requiring CHURCHVIEW to undergo ADA and disability awareness training; and

g) Such other relief as the Court deems just and proper.

## COUNT VI
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AGAISNT CHURCHVIEW

66. Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 29 above.

67. CHURCHVIEW owed a duty of reasonable care toward MASSEY and the actions of CHURCHVIEW breached that duty of care.

68. CHURCHVIEW'S negligence proximately caused MASSEY'S injuries.

69. The actions and negligence of CHURCHVIEW did cause MASSEY severe and significant emotional distress and caused physical harm in the form of stress, anxiety, migraines, nausea, difficulties sleeping and other harm.

**WHEREFORE**, MASSEY requests that this Court enter judgment in her favor and against CHURCHVIEW as follows:

a) A declaratory judgment that CHURCHVIEW has intentionally inflicted emotional distress upon MASSEY in violation of Illinois law;

b) An order requiring CHURCHVIEW to return MASSEY to employment as Director of Nursing with reasonable accommodations for her disability;

c) Compensatory damages, including back pay, front pay and lost wages;

d) Punitive damages;

e) Attorneys' fees and costs;

f) An order requiring CHURCHVIEW to undergo ADA and disability awareness training; and

g) Such other relief as the Court deems just and proper.

## COUNT VII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST GARDANT

70. Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 29 above.

71. The actions of GARDANT in terminating MASSEY for absences related to her disability, was intended to cause or recklessly or consciously disregarded the probability of causing MASSEY severe and significant emotional distress.

72. The conduct of GARDANT against MASSEY was extreme and outrageous.

73. The actions of GARDANT did cause MASSEY severe and significant emotional distress and caused physical harm in the form of stress, anxiety, migraines, nausea, difficulties sleeping, and other harm.

**WHEREFORE**, MASSEY requests that this Court enter judgment in her favor and against GARDANT as follows:

a) A declaratory judgment that GARDANT has intentionally inflicted emotional distress upon MASSEY in violation of Illinois law;

b) An order requiring GARDANT to allow MASSEY to return to employment as Director of Nursing with reasonable accommodations.

c) Compensatory damages, including lost wages, back pay and front pay;

d) Punitive damages;

e) Attorneys' fees and costs;

f) An order requiring GARDANT to undergo ADA and disability awareness training; and

g) Such other relief as the Court deems just and proper.

## COUNT VIII
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AGAINST GARDANT

74. Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 29 and 46-61 above.

75. GARDANT owed a duty of reasonable care toward MASSEY and the actions of School District breached that duty of care.

76. GARDANT'S negligence proximately caused MASSEY'S injuries.

77. The actions and negligence of GARDANT did cause MASSEY severe and significant emotional distress and caused physical harm in the form of stress, anxiety, migraines, nausea, difficulties sleeping and other harm.

**WHEREFORE**, MASSEY requests that this Court enter judgment in her favor and against GARDANT as follows:

a) A declaratory judgment that GARDANT has intentionally inflicted emotional distress upon MASSEY in violation of Illinois law;

b) An order requiring GARDANT to return MASSEY to employment as Director of Nursing with reasonable accommodations for her disability;

c) Compensatory damages, including back pay, front pay and lost wages;

d) Punitive damages;

e) Attorneys' fees and costs;

f) An order requiring GARDANT to undergo ADA and disability awareness training; and

g) Such other relief as the Court deems just and proper.

## COUNT IX
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST BELL

78. Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 29 above.

79. The actions of BELL in terminating MASSEY for absences related to her disability, was intended to cause or recklessly or consciously disregarded the probability of causing MASSEY severe and significant emotional distress.

80. The conduct of BELL against MASSEY was extreme and outrageous.

81. The actions of BELL did cause MASSEY severe and significant emotional distress and caused physical harm in the form of stress, anxiety, migraines, nausea, difficulties sleeping, and other harm.

**WHEREFORE**, MASSEY requests that this Court enter judgment in her favor and against GARDANT as follows:

a) A declaratory judgment that BELL has intentionally inflicted emotional distress upon MASSEY in violation of Illinois law;

b) An order requiring BELL to allow MASSEY to return to employment as Director of Nursing with reasonable accommodations.

c) Compensatory damages, including lost wages, back pay and front pay;

d) Punitive damages;

e) Attorneys' fees and costs;

f) An order requiring BELL to undergo ADA and disability awareness training; and

g) Such other relief as the Court deems just and proper.

15

## COUNT X
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AGAISNT BELL

82. Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 29 above.

83. BELL owed a duty of reasonable care toward MASSEY and the actions of BELL breached that duty of care.

84. BELL'S negligence proximately caused MASSEY'S injuries.

85. The actions and negligence of BELL did cause MASSEY severe and significant emotional distress and caused physical harm in the form of stress, anxiety, migraines, nausea, difficulties sleeping and other harm.

**WHEREFORE**, MASSEY requests that this Court enter judgment in her favor and against BELL as follows:

a) A declaratory judgment that BELL has intentionally inflicted emotional distress upon MASSEY in violation of Illinois law;

b) An order requiring BELL to return MASSEY to employment as Director of Nursing with reasonable accommodations for her disability;

c) Compensatory damages, including back pay, front pay and lost wages;

d) Punitive damages;

e) Attorneys' fees and costs;

f) An order requiring BELL to undergo ADA and disability awareness training; and

g) Such other relief as the Court deems just and proper.

>Respectfully submitted,
>
>YVETTA MASSEY
>
>By:    s/ Calvita J. Frederick
>         Attorney for Plaintiff

Calvita J. Frederick
Post Office Box 802976
Chicago, Illinois 60680-2976
312-421-5544
ARDC # 6184001