IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| YVETTA MASSEY, ) | |
| ) | |
| *Plaintiff*, ) | No. 17 C 2253 |
| ) | |
| v. ) | Judge Virginia M. Kendall |
| ) | |
| CHURCHVIEW SUPPORTIVE LIVING, INC., ) | |
| et al., ) | |
| ) | |
| *Defendants*. ) | |
| ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Yvetta Massey filed suit against Defendants Churchview Supportive Living, Inc., Gardant Management Solutions, Inc., and Kenyatta Bell alleging violations of the Rehabilitation Act,[1] the Americans with Disabilities Act ("ADA"),[2] and state law claims of Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress. This Court dismissed without prejudice the state law claims against all Defendants and the Rehabilitation Act and ADA claims against Gardant, and granted Plaintiff's request for leave to file an Amended Complaint. Plaintiff timely filed an Amended Complaint, which renews only the allegations of violations of the Rehabilitation Act and the ADA against each Churchview and Gardant. Both Defendants filed a Motion to Dismiss. Churchview seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) of the Rehabilitation Act claim against it (Count I). Gardant seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) of both the Rehabilitation Act and ADA claims against it (Counts III and IV). The

---

[1] 29 U.S.C. § 794.

[2] 42 U.S.C. §12101.

1

Motions to Dismiss are granted in part and denied in part for reasons set forth below.  [Dkt. Nos. 38, 39.]

## BACKGROUND

The facts set forth in Plaintiff's Amended Complaint are accepted as true for the purpose of reviewing the Motions to Dismiss.  *Reynolds v. CB Sports Bar, Inc*., 623 F.3d 1143, 1146 (7th Cir. 2010).  But for a few additions, the facts are largely the same as those alleged in Plaintiff's initial complaint.

Churchview Supportive Living, Inc. provides affordable assisted facilities to the elderly in the Chicago area.  (Dkt. No. 34 at ¶ 2.)  Gardant Management Solutions, Inc. owns, manages or is otherwise closely associated with Churchview.  (*Id.* at ¶ 3.)  Churchview and/or Gardant receive federal funds from various programs that provide financial assistance for elderly adults' care in assisted living facilities.  (*Id.* at ¶ 36, 52.)

From March 3 to November 11, 2015, Plaintiff Yvetta Massey worked as the Director of Nursing (DON) at Churchview.  (*Id.* at ¶ 7-8, 16.)  In 2015, Massey was diagnosed with a rare condition known as Nesidioblastosis that requires her to eat every two hours.  (*Id.* at ¶¶ 10-11.)  Massey's employers knew of this condition and the need for a workplace accommodation.  (*Id.* at ¶ 13.)

During the approximately nine months Massey worked at Churchview she had several instances of extended absences.  (*Id.* at Ex. A.)  As a result of these absences, Churchview issued warnings—one verbally in July, and one in writing in August—to Massey regarding her extended periods of time away from work.  (*Id.* at ¶¶ 14-15.)  Finally, on November 11, 2015, Churchview terminated Massey over the phone and followed up with a written letter a day later informing her of the same.  (*Id.* at ¶ 16, Ex. B.)

In response, on January 8, 2016, Massey filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging employment discrimination based on her disability in violation of the Americans with Disabilities Act of 1990. (*Id.* at Ex. D.) The charge names "Churchview Supportive Living" as her employer and sole respondent of the charge. (*Id.*) In December 2016, the EEOC informed Massey that it was unable to conclude there was any violation of the ADA based on the information she provided. (*Id*. at Ex. E.) The dismissal also served as Massey's notice of her "right-to-sue" letter. (*Id.*)

Massey's Amended Complaint alleges four claims against the Defendants. Counts I and II are Rehabilitation Act and ADA claims levied against Churchview for employment discrimination based on Massey's disability. (*Id.* at ¶¶ 41, 47.) Counts III and IV are the same but levied against Gardant. (*Id*. at ¶¶ 58, 64.)

## **LEGAL STANDARD**

"To survive a motion to dismiss under 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). The Court "construe[s] the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). However, "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 566 U.S. at 678). The Court may also consider exhibits attached in support of the

complaint that pertain to facts set forth within the pleading. *Thompson v. Illinois Dept. of Professional Regulation*, 300 F.3d 750, 754 (7th Cir. 2002).

## DISCUSSION

### I. Massey's Rehabilitation Act Claims against Churchview and Gardant Are Not Dismissed

As the Court discussed in its previous Order, to succeed on a claim of discrimination under the Rehabilitation Act, plaintiff must demonstrate that: (1) she is disabled as defined by the Act; (2) she is otherwise qualified for the position sought; (3) she has been excluded from the position solely because of her disability; and (4) the position exists as part of a program or activity receiving federal financial assistance. *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 755 (7th Cir. 2006). Defendants argue that Massey fails to allege the fourth element—that her position as DON existed as part of a program or activity receiving federal financial assistance.

The Court previously dismissed the Rehabilitation Act claim against Gardant in Massey's initial complaint on these grounds.[3] The fourth element requires both program-specific federal funding and some type of connection between the plaintiff's employment and the narrowly defined program or activity receiving such funding. *Foss v. City of Chicago*, 817 F.2d 34, 35 (7th Cir. 1987). In her initial complaint, Massey alleged only that Gardant receives federal funding, and that its operation of the assisted living facilities constitutes a program or activity. (Dkt. No. 1 at ¶¶ 50-51.) Massey did not identify the type of federal funding or the purpose of said funding, and did not provide any additional detail as to how the funding or her specific employment at the assisted living facilities constitutes a program or activity. (Dkt. No. 33 at 5.)

---

[3] Churchview did not seek, and therefore the Court did not consider whether it was appropriate, to dismiss the Rehabilitation Act claim against Churchview in the initial complaint. (*See* Dkt. No. 15.)

The Court held, therefore, that Massey had not satisfied the fourth element for purposes of the Act, and granted Massey's request for leave to amend in order to "more clearly state that her position was funded by federal financial assistance." (*Id.* at 4-5.) Churchview and Gardant argue now that Massey has failed to cure this deficiency in her Amended Complaint.

Massey's Amended Complaint alleges that she worked as the Director of Nursing at Churchview, which is affiliated with Gardant, and that Churchview provides affordable assisted living facilities for the elderly in the Chicago area. (Dkt. No. 34 at ¶¶ 2-3, 7-8, 16.) Massey alleges further that Churchview and Gardant receive federal funding directly or indirectly from certain programs that provide financial assistance to elderly adults receiving care in assisted living facilities, including: Medicare Part B, which can "be used to augment care that spans the gap between assisted living facilities and nursing homes," and "enables residents to remain in assisted living facilities by increasing a quality of life"; Medicare Part A, which "covers skilled nursing care in a skilled nursing facility under certain conditions for a limited time"; Supplemental Security Income, ("SSI"), through which "seniors receive benefits directly from the government," which "they can apply . . . towards any need they have including home care, adult day care and assisted living"; Veterans Pension Aid and Attendance Funds, which "includes care received in assisted living facilities"; and Section 8 vouchers, which "apply for payment to assisted living facilities." (Dkt. 34 at ¶¶ 36, 52.) Accepting these facts as true, the Amended Complaint sufficiently alleges that Massey's position as DON existed as part of a program or activity receiving federal assistance and the Defendants have been placed on notice as to which programs are implicated.

First, as alleged, Churchview's assisted living facilities constitute a "program or activity" receiving federal assistance for purposes of the Act. The Act defines "program or activity" to

include "all of the operations of . . . an entire corporation . . . which is principally engaged in the business of providing . . . health care . . . any part of which is extended Federal financial assistance." 29 U.S.C. § 794(b)(3)(A)(ii). Massey alleges Defendants are corporations engaged in the business of providing health care through assisted living facilities. (Dkt. 34 at ¶¶ 2, 3); *see Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 528 (7th Cir. 2015) (alleging that organization was engaged in providing one or more enumerated services as their principal business activities is sufficient to plead that organization was "principally engaged" for purposes of "program or activity" definition).

The question then is whether Churchview's assisted living facilities receive federal financial assistance for purposes of the Act. While the Seventh Circuit has not directly ruled on whether Medicare or Medicaid payments constitute "federal financial assistance" for purposes of the Rehabilitation Act, it has suggested that they do. *See Ruffin v. Rockford Mem'l Hosp.*, 181 F. App'x 582, 585 (7th Cir. 2006) (stating in dicta that hospital's rehabilitation program "qualifies as a receiver of 'Federal financial assistance' because it receives Medicare and Medicaid payments"); *see also Grzan v. Charter Hosp.of Nw. Indiana*, 104 F.3d 116 (7th Cir. 1997) (acknowledging Medicaid or Medicare funds could constitute "federal financial assistance," but dismissing Rehabilitation Act claim against hospital employee for failing to allege employee actually received the funds), *abrogation on other grounds recognized by Amundson ex rel. Amundson v. Wis. Dep't of Health Servs.*, 721 F.2d 871, 874 (7th Cir. 2013).

Additionally, several courts in other districts and circuits have considered whether Medicare or Medicaid payments constitute "federal financial assistance" and have held that they do. *See, e.g., United States v. Baylor Univ. Med. Ctr.*, 736 F.2d 1039, 1049 (5th Cir. 1984) (medical center's "receipt of Medicare and Medicaid payments subjects it to appropriate action

under Section 504 of the Rehabilitation Act"); *United States v. Univ. Hosp. of State Univ. of New York at Stony Brook*, 575 F. Supp. 607, 613-14 (E.D.N.Y. 1983) (same for university hospital), *aff'd sub nom. United States v. Univ. Hosp., State Univ. of New York at Stony Brook*, 729 F.2d 144 (2d Cir. 1984); *Alexander v. Kujok*, 158 F. Supp. 3d 1012, 1022 (E.D. Cal. 2016) ("Medicare and Medicaid payments have been widely interpreted as federal financial assistance when raised in the context of Section 504 litigation, like this case, brought against healthcare entities receiving such payments on behalf of individuals receiving health services.") (citing *Baylor*); *Baker v. Portnow*, 127 F. Supp. 3d 1259, 1261–62 (M.D. Fla. 2015) ("It is undisputed that at all material times, Portnow was a health care provider that received Medicare and/or Medicaid payments, and therefore was bound to adhere to the mandates of the Rehabilitation Act."); *Rumble v. Fairview Health Servs.*, No. 14-CV-2037 SRN/FLN, 2015 WL 1197415, at *13 (D. Minn. Mar. 16, 2015) ("[C]ourts outside the Eighth Circuit have resoundingly held that Medicare and Medicaid payments constitute federal financial assistance for, at least, the purposes of section 504 and Title VI.") (citing *Baylor* and earlier cases); *Rose v. Cahee*, 727 F. Supp. 2d 728, 737 (E.D. Wis. 2010) (The Rehabilitation Act "applies to programs or entities which receive Medicare and Medicaid funds for the provision of medical services to patients.") (citing *Baylor* and *Grzan*). These courts rightly focused their analysis on the intent of Congress in passing the statutes granting Medicare and Medicaid funds. *See, e.g., Baylor*, 736 F.2d at 1045 ("[T]he legislative history of the Medicare and Medicaid bill indicates that Congress had no doubt that these forms of federal assistance would trigger federal antidiscrimination protections."); *see also Foss*, 640 F. Supp. 1088, 1092 (N.D. Ill. 1986), *aff'd*, 817 F.2d 34 (7th Cir. 1987) ("What constitutes a federally funded program depends even more on the intent of Congress when it passed the statute granting the federal funds on which the claim is based."). The Court finds

7

these decisions persuasive and agrees that, by receiving funds through Medicare and Medicaid programs, Churchview's assisted living facilities constitute a "program or activity" for purposes of the Act.

Second, the Court can reasonably infer from the Amended Complaint that Massey's position as DON existed as part of Churchview's assisted living facilities. Defendants argue that Massey must allege she was a "direct beneficiary" of the relevant federal funding. Defendants cite only to *Dunlap v. Chicago Osteopathic Hospital, et al.* to support this argument. No. 86 C 2787, 1988 WL 20084 (N.D. Ill. Feb. 26, 1988). In *Dunlap*, the district court dismissed the plaintiff-employee's Rehabilitation Act claim against the hospital-employer on the basis that an employee could not possibly be a "direct beneficiary" of the federal funds received by the hospital. *Id.* at *2. However, *Dunlap* relied on and misapplied the Supreme Court's holding in *U.S. Dep't of Transp. v. Paralyzed Veterans of America*, 477 U.S. 597 (1986). *Id. Paralyzed Veterans* addresses who may be liable under the Rehabilitation Act—not who may bring a claim under the Act.[4] Contrary to Defendants' argument, Massey is not required to show she is a "direct beneficiary" of the federal funds; rather, the Act "prohibits employment discrimination regardless of the purpose of the federal financial assistance." *Consol. Rail Corp. v. Darrone*, 465 U.S. 624, 635 (1984). Massey need only show "some type of connection" between her employment and the program or activity receiving such funding. *See Foss,* 817 F.2d at 35. She has sufficiently done so at this stage.

Defendants' Motions to Dismiss Massey's claims of discrimination under the Rehabilitation Act (Counts I and III) are denied.

---

[4] In *Paralyzed Veterans*, the Supreme Court distinguished between a "recipient" and "beneficiary" of federal funds, and held that only parties that actually "receive" federal funds are subject to liability under the Rehabilitation Act; beneficiaries, or "indirect recipients," of such funds are not subject to obligations imposed under the Act. 477 U.S. at 604-07.

## II. Massey's ADA Claim Against Gardant Is Dismissed For Failure to Exhaust Administrative Remedies

The Court previously dismissed Massey's initial ADA claim against Gardant for failing to show that she exhausted her administrative remedies by filing an EEOC charge. (Dkt. No. 33 at 6.) Specifically, the Court found that Massey filed an administrative action against only Churchview, and that Gardant is not listed anywhere on the charge form, nor identified on the right-to-sue letter from the EEOC. (*Id.*) The Court granted Massey leave to amend her claim, if possible, to satisfy the required showing of administrative exhaustion. (*Id.* at 7.) Massey's claim as amended fares no better.

As discussed in the Court's previous Order, like lawsuits filed pursuant to Title VII of the Civil Rights Act and the ADEA, a plaintiff must first exhaust her administrative remedies before filing a civil suit under the ADA by filing a timely EEOC charge and receiving a right-to-sue letter. *Gogos v. AMS Mechanical Systems, Inc.*, 737 F.3d 1170, 1172 (7th Cir. 2013). Ordinarily, a plaintiff who fails to name a particular defendant in an EEOC charge is prohibited from naming that same defendant in a subsequent civil suit. *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890, 905 (7th Cir. 1981);[5] *see also Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013). The purpose for the rule is twofold: "First, it serves to notify the charged party of the alleged violation. Second, it gives the EEOC an opportunity for conciliation." *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 126 (7th Cir. 1989). There is an exception to the rule where a plaintiff can prove that an unnamed defendant "has been provided with adequate notice of the charge," and where "that party has

---

[5] Pursuant to 42 U.S.C. § 12117, the same requirements with regard to administrative exhaustion that apply to suits filed pursuant to Title VII of the Civil Rights Act apply also to suits filed under the ADA.

been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance." *Eggleston*, 657 F.2d at 905.

Massey argues, as she did previously, that she satisfies this exception.[6] The only factual allegations added to the Amended Complaint to support this argument are that Gardant is "closely affiliated and associated with Churchview," (Dkt. No. 34 at ¶ 3); "much of [Massey's] communications concerning her employment, including her monthly paychecks and administration of benefits were generated by and received from Gardant," (*Id.* at ¶ 30); "Churchview and Gardant share the same attorneys," (*Id.* at ¶ 31); "[a]ny investigation of Massey's charge against Churchview involved Gardant," (*Id.*); and "[f]or purposes of this litigation, Churchview and Gardant share the same insurance company." (*Id.*)[7] These additional facts purportedly show that Gardant had "constructive notice of . . . the filing of the EEOC charge which named Churchview." (*Id.*)

But it is not enough to allege that Gardant was on notice of the charge filed against Churchview; Massey must allege that Gardant had notice of a charge against *it*. *Alam*, 709 F.3d at 666; *see also Tamayo*, 526 F.3d at 1089 ("Although [plaintiff] may have notified [defendant] that an EEOC charge had been filed against someone, . . . her complaint does not allege that she notified [defendant] that a charge had been filed against *it*.") (emphasis in original); *Schnellbaecher*, 887 F.2d at 126 ("Although [parent corporation] had notice of the charges against [subsidiary], it did not thereby have any notice of any charges against *it*, nor did it have any opportunity to conciliate on its own behalf.") (emphasis in original).

---

[6] Massey presents the same argument and legal analysis in her opposition to Gardant's Motion to Dismiss the ADA claim in the Amended Complaint that she presented in opposition to Gardant's previous Motion to Dismiss the ADA claim against it in the initial complaint.

[7] Massey has also added various conclusory allegations, which the Court will not consider in determining whether Massey has sufficiently plead her ADA claim. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011).

Massey argues that the failure to name Gardant in the EEOC charge is not fatal to her claim because EEOC charges "are to be construed with the 'utmost liberality' and parties sufficiently named or alluded to in the factual statement are to be joined." (Dkt. 48-2 at 10 (citing *Eggleston*, 657 F.2d at 906).) The factual statement in Massey's EEOC provides only that, during her employment with Churchview, Massey "was disciplined and subsequently discharged." (Dkt. No. 34 at Ex. D). These facts do not allude to Gardant. In fact, Massey admits that she was terminated by Churchview, not Gardant. (Dkt. No. 34 at ¶ 30.) *C.f. Gibson v. Indiana State Pers. Dep't*, No. 1:17-cv-01212-RLY-TAB, 2017 WL 6342009, at *2 (S.D. Ind. Dec. 12, 2017) (individual actually named in charge as the person who terminated plaintiff would have sufficient notice, whereas others not mentioned would not); *Santiago v. Patel*, No. 14-cv-10260, 2015 WL 6756286, at *3 (N.D. Ill. Nov. 5, 2015) (individual could not plausibly claim he did not have notice of charge where he received advanced warning of plaintiff's EEOC filing and charge partially concerned his conduct)).

Finally, Massey also urges the Court to apply the "Glus test," a four-prong analysis employed by the Third Circuit in *Glus v. G. C. Murphy Co.*, 562 F.2d 880 (3d Cir. 1977), and applied by the Seventh Circuit in *Eggleston* as alternative grounds for reaching its same conclusion under the "notice" analysis articulated above. (Dkt. No. 48-3 at 7-8.) Since *Eggleston*, the Seventh Circuit has consistently applied the "notice" analysis, and not the Glus test, to determine whether the exception applies. *See, e.g.*, *Alam*, 709 F.3d 662, 666–67 (7th Cir. 2013); *Tamayo*, 526 F.3d 1074, 1089-90 (7th Cir. 2008); *Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 604 (7th Cir. 2001); *Schnellbaecher*, 887 F.2d 124, 126-27 (7th Cir. 1989); *see also Wells v. Hosp. Grp. of Illinois, Inc.*, No. 02 C 6111, 2003 WL 21704416, at *4 (N.D. Ill. July 23, 2003) ("Plaintiff misconstrues the *Eggleston* exception because she relies on the balancing test

from *Glus* . . . Although the court in *Eggleston* [] outlined this balancing test, it does not apply in this court.").

Regardless, the Court reaches the same result under the *Glus* four-prong analysis, which considers:

(1) Whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint.

(2) Whether, under the circumstances, the interests of a named party are so similar to the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings.

(3) Whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party.

(4) Whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Eggleston*, 657 F.2d at 908. The test "is not a mechanical one," and "no single prong is to be decisive." *Id.*

With regard to the first prong, Massey admits that while working at Churchview, "much of her communications concerning her employment, including her monthly paychecks and administration of benefits were generated by and received by Gardant," (Dkt. No. 34 at ¶ 30), and that Churchview's website repeatedly mentions Gardant. (Dkt. No. 48-2 at 11, Ex. A.) There is no reason to believe that, armed with this information, she could not have through reasonable effort ascertained Gardant's role in her termination, if any, before filing her EEOC charge. Moreover, as to the fourth prong, the fact that Gardant at times communicated directly with Massey indicates that its relationship with Massey was not to be only through Churchview. Massey does not allege that Gardant ever represented that it was to be so; rather, she admits that, even now, she is unclear as to what the contours of the relationship between Gardant and Churchview is. (Dkt. No. 48-2 at 10.) With regard to the second prong, Massey's admitted

12

uncertainty regarding Defendants' relationship undermines the assertion in her Amended Complaint that Defendants' are "so closely related" that it would be unnecessary to include Gardant in the EEOC charge for purposes of obtaining voluntarily conciliation. (Dkt. No. 34 at ¶ 31.) Finally, even assuming Gardant suffered no prejudice under the third prong because no EEOC proceedings took place, on the whole Massey fails the four-prong test.

Based on the Amended Complaint, Massey fails to show that she has exhausted her administrative remedies by filing an EEOC charge against Gardant. The Court highlighted this deficiency in Massey's initial complaint and permitted her to amend in order to satisfy the required showing of administrative exhaustion. The few facts added to the Amended Complaint do not cure this deficiency. Because Massey has failed to meet her burden a second time, the discrimination claim filed pursuant to the ADA against Gardant is dismissed with prejudice.

## CONCLUSION

For the reasons stated above, the Court denies Defendants' Motion to Dismiss Counts I and III of Plaintiff's Amended Complaint, and grants Defendant Gardant's Motion to Dismiss Count IV of the Amended Complaint with prejudice. Therefore, Counts I and II against Defendant Churchview and Count III against Defendant Gardant remain. [Dkt. Nos. 38, 39.]

Hon. Virginia M. Kendall
United States District Judge

Date: February 21, 2018